## Case No. 7,960.

### LA BAW et al. v. HAWKINS et al.

[1 Ban. & A. 428; [1] 6 O. G. 724.]

Circuit Court, D. New Jersey. Sept., 1874.

PATENTS — REISSUE IMPROPERLY GRANTED — VARIANCE FROM ORIGINAL—DETERMINATION BY THE COURT—MITRE MACHINE—NOVELTY.

1. In a suit for the infringement of a reissued patent, upon an allegation of the answer that the reissue was improperly granted, the court will determine only, and as a matter of construction, from inspection of the specifications, claims and drawings of the original and reissue patents, whether the reissue is for the same invention as that described in the original patent.

2. The reissued patent, granted to George W. La Baw, May 18, 1869, for improvement in mitre machines, held not to be void for repugnancy between the invention therein described, and that described in the original letters patent.

3. Evidence upon the question of novelty, of which notice was not given in the answer, will not, when taken under complainant's objection, be considered by the court as bearing upon the question whether the patentee was the first inventor; such evidence is admissible only for the purpose of showing the state of the art at the date of the "invention."

4. Where an inventor has perfected his invention and obtained letters patent therefor, the patent cannot be invalidated by evidence showing that crude and unsuccessful experiments were made by others previous to his invention.
[Cited in Edison Electric Light Co. v. Beacon, etc., Co., 54 Fed. 693.]

5. The machine for cutting mitres, patented to Stephen W. Hall, August 17, 1858, held to infringe the reissued patent granted to George W. La Baw, May 18, 1869, for improvement in mitre machines.

6. The reissued patent, granted May 18, 1869, to George W. La Baw, for improvement in mitre machines, held valid.

[This was a bill in equity by George W. La Baw and others against William Hawkins and others for the alleged infringement of reissued patent No. 3,445.]

Edward L. Dobbins, for complainants.

Runyon & Leonard, for defendants.

NIXON, District Judge. This is a suit for alleged infringement of letters patent, No. 3,445 for "improvement in mitre machines," reissued to George W. La Baw, May 18, 1869, and extended by the commissioner of patents for seven years from May 29, 1869. The defendants filed a joint and several answer; alleging, among other things, that the surrender made by the complainant, of his original patent, was not for a good and sufficient cause, and that the reissue was for a different invention; denying the infringement, and setting up prior public use. They admit that they have constructed and sold mitre machines, containing knives or cutters in combination with mechanism for operating the same for cutting mitres, under the authority of letters patent granted to one Stephen W. Hall, August 17, 1858, but deny that the said

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

Hall machine infringes upon the invention described in the bill of complaint.

The main issues presented, are: 1. Whether the reissue to La Baw is for the same invention, specified and described in the original patent? 2. Whether the La Baw patent is void, because of prior public use of the invention? 3. Whether the Hall patent is an infringement of the complainants'?

1. The action is founded upon the reissued letters patent. If an invention is therein described, different from the one specified in the original patent, the reissue is void, and the suit must fail. The only right that an inventor has to surrender his patent, and obtain a reissue, is found in the fifty-third section of the act of July 8, 1870 (16 Stat. 206), which was substantially copied from the thirteenth section of the act of July 4, 1836 (5 Stat. 122), in force when the surrender was made, and the reissue, under consideration, was obtained. The commissioner of patents is only authorized to grant a reissue for the same invention, where the original patent was inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery, more than he had a right to claim as new, and where the error has arisen by inadvertence, accident or mistake, and without any fraudulent or deceptive intention.

I take no notice of the denial in the defendants' answer, that the letters patent were surrendered for good and lawful cause, or that they were inoperative or invalid, or deficient or insufficient in any respect, because that question is not open for examination here. Since the case of Seymour v. Osborne, 11 Wall. [78 U. S.] 516, it seems to be settled that neither reissued nor extended patents can be abrogated by an infringer, in a suit against him for an infringement, upon the ground that the letters patent were procured by fraud in prosecuting the application for the same before the commissioner, and that the act of the commissioner, in accepting a surrender and granting a reissue, is final and conclusive, and not re-examinable in a suit in the circuit court, unless it is apparent, upon the face of the patent, that he has exceeded his authority, or that there is such a repugnancy between the old and the new patent, that it must be held as matter of legal construction, that the new patent is not for the same invention as that embraced and secured in the original patent.

In all cases of reissue and extension, the presumption is, that the commissioner has not exceeded his authority, but has reissued and extended the same invention. The burden of proof, is, therefore, on the defendants, to show that he has exceeded his authority, and to point out where the repugnancy and difference, between the two, exist.

The patentee has a right to change his modes of expressing his specifications or claims—restricting or enlarging them, so as, more fully, to effectuate his intention. Variations in this respect do not make the two patents different. The precise object of the statute is to authorize such amendments. What he is not allowed to do, is to interpolate into the reissue, new features and devices, which were not suggested or substantially indicated in the original specifications, drawings, models, or claims.

What evidence have the defendants offered, to prove that the reissue was for an invention different from the one described in the original patent? I have looked through their record, and the brief of their counsel, and do not find a syllable on the subject. Their two experts, Beadle and Crawford, are not asked for their opinion, although they were examined after the complainants' expert, Edward E. Quimley, had testified (Complts. Record, p. 28): "I have examined them" (i. e. the original, and reissued letters patent to La Baw), "and there is nothing contained in the reissue which is not set forth in the original. The claim, in the original patent, was as broad as language could make it. In the reissue, the claims are narrowed down to the specific construction of the devices exhibited in the invention."

Under this state of the proof, it was hardly necessary for the court to look into the specifications and claims, described in the original and reissued letters patent, to ascertain whether any difference appeared upon the face of the papers. But, such an inspection has been made, and the result of the comparison of the two instruments, is, that tne first objection of the defendants is not sustained. See Carew v. Boston Elastic Fabric Co. [Case No. 2,397].

2. Is the La Baw patent void, because of the prior public use of the invention? The defendants, in their amended answer, set up, (1) That the invention of the complainant was anticipated by the letters patent granted and issued to one Charles B. Fitch of Galena, Illinois, on the 14th of June, 1853; (2) that the same had been previously invented and discovered by one E. M. Hendrickson of Brooklyn, New York. as early as the year 1850; (3) that it had been combined, invented, and used by Charles W. Jenks of Providence, Rhode Island, in the year 1852; and (4) that it was on public exhibition, at the fair of the American Institute, in the city of New York, in 1847. and was in public use in Poughkeepsie, New York, by one John A. Montgomery, in the same year.

No other notice was given in the answer; but, on the examination before the master, the defendants offered Hugh W. Beadle, J. J. Jenks. and W. H. Kirk, to prove the previous invention, knowledge, and use of the thing patented. The counsel for complainants objected to their giving testimony in the matter, because their names and residences had not been disclosed in the answer. Their examination was taken, subject to the objection, and the complainant, at the hearing, moved to strike from the record all their evi-

dence touching prior knowledge or use. The motion was resisted by the counsel of the defendants, on the ground that these witnesses were offered to prove the state of the art, and that their testimony was relevant for that purpose, if not to show prior knowledge and public use of the complainants' invention.

Whatever weight ought to be given to their evidence—viewing them in the light of experts, attempting to exhibit the state of the art, at the time of the alleged invention of the complainant, La Baw—I have no hesitation in refusing to consider it, now, while inquiring whether the complainants' patent is void because of the prior knowledge and the public use of the invention. The statute is explicit on this subject, and leaves no discretion in the court. The sixty-first section of the act of July 8, 1870, provides that: "In notices as to proof of previous invention, knowledge, or use of the thing patented, the defendant shall state the names of patentees and the dates of their patents, and when granted, and the names and residences of the persons alleged to have invented, or to have had the prior knowledge of the thing patented, and where and by whom it had been used. * * * And the like defences may be pleaded in any suit in equity for relief against an alleged infringement, and proofs of the same may be given upon like notice in the answer of the defendant, and with the like effect." 16 Stat. 208.

Without particularly adverting to the construction given to this section by Judge Shepley, in Roberts v. Buck [Case No. 11,897]; by Judge Woodruff, in Collender v. Griffith [Id. 3000]; by Judge Blatchford, in Decker v. Grote [Id. 3,726]; and by Judge Lowell, in Richardson v. Lockwood [Id. 11,787],—it is sufficient, for my present inquiry, to know that the supreme court, in Railroad Co. v. Dubois, 12 Wall. [79 U. S.] 47, held, that the novelty of a patented invention cannot be assailed by any other evidence than that of which the plaintiff has received notice, and that the state of the art, at the time of the alleged invention, though proper to be considered by the court in construing the patent, in the absence of notice, has no legitimate bearing upon the question whether the patentee was the first inventor.

Restricting, then, the evidence, to that of which notice was given, has anything been exhibited, that impeaches the novelty of the complainants' invention? The defendants first offered the patent granted to Charles B. Fitch, June 14, 1853, for "an improvement in the mode of cutting tenons," and which antedates the original patent of the complainants, more than one year. It is fair to assume that this was fully considered by the commissioner of patents; (1) when the La Baw patent was first issued; (2) when it was reissued; and (3) when it was extended. This makes a strong prima facie case for the complainants, and will require very satisfactory evidence of identity, to rebut the presumption, that the two machines are substantially different in their construction or mode of operation. They were designed, indeed, for different purposes—the one for cutting tenons, and the other mitres—but, if the principle of the machines is the same, the dissimilar uses for which they were constructed are not material. Both parties have made exhibits of a certified copy of the letters patent to Fitch, the complainants, to prove how unlike the invention is to La Baw's, and the defendants, to show their identity. Each examined one witness—their expert, and experts generally differ, except in regard to mere formal or immaterial matters. Quimley, for the complainants, testifies that the La Baw invention is a machine for cutting mitres, i. e., for severing the object operated upon at an angle of forty-five degrees, and that it has the further peculiarity of making two mitering cuts, at the same time. "If, for example," he says, "it is desired to divide a strip of moulding ten or twelve feet long, into lengths, say of two feet, by the use of this machine, the strip can be so divided, without waste, and without about one half of the number of operations which would be necessary if it were attempted to cut up the strip by hand; the cutting instrument. being what is called a V cutter, makes the mitre cut on the opposite ends of two pieces at the same time. The elements of the machine are (1) an instrument for cutting partially across the grain of the wood; and (2) a supporting bed, and suitable guides for presenting the object operated upon in the proper relation to the cutting instrument, to enable it to cut at an angle of forty-five degrees, neither of which appear in the "Fitch Exhibit." He does not find, in the specifications of Fitch, any allusion to a machine for cutting mitres; nor does he believe that it could, in fact, as constructed, cut a mitre.

On the other hand, one of the defendants' experts, Beadle, and the only one examined on the subject, says that he discovers, in the Fitch machine, a V-shaped cutter capable of making a drawing cut, arranged, in some respects, similar to the cutter X of La Baw's, in combination with mechanism for operating it. He detects in the patent the following elements: (1) A bevel cutter capable of delivering a shear cut and carried by a sliding stock; (2) mechanism for applying the necessary power; (3) a table or bed, provided with stops or holders, for holding the object operated upon. The holders are not shown in the drawing, but are referred to on the tenth page of the specifications. The only cross examination on this point to which he seems to have been subjected, were questions 27 and 28 (fol. 97), in one of which he was asked, what invention was described in the Fitch patent, and, in the other, whether the specifications referred to any devices for cutting mitres? His replies were, that the invention related to cutters for tenoning ma-

chines, and that the specifications contained no statement that the machine was to be used for cutting mitres.

Under this conflict of views, it became necessary, for the court, by an examination of the claims, specifications, and drawings of the two patents, to determine what was claimed in each, and whether the one anticipated the other. Such examination has been carefully made, and, without stopping to assign the reasons which have led us to the conclusion, we are of the opinion that the La Baw patent was not anticipated by Fitch, and that it is entitled to the character of an original and independent invention.

Less special attention need be given to the alleged public use of the invention by Hendrickson, Jenks, and Montgomery. In regard to Hendrickson, his testimony refers to a machine for cutting tin. He was waited upon by the solicitor of the complainants', and, at first, made an affidavit: "That about midsummer of 1855, he made a machine for cutting corners in sheets of tin for Evans. Bachus & Co., of Brooklyn, New York; that, whilst he was unable to fix the exact date of its construction, he was positive it was not before the middle of the year 1855, and believed it was later in that year; and that said machine was not adapted for cutting wood, and could not have been used for such a purpose, without reconstruction and invention, to adapt it therefor." He was subsequently examined by the defendants, when he exhibited a model of the machine, constructed by him for Bachus & Co., made from memory, and which, quite nearly, embraces the prevailing and characteristic features of the complainants' (La Baw's) invention. He there contradicts his affidavits in a material point, and fixes the date for making the original machine in the early part of the year 1852. He gives what seems to be a satisfactory reason for changing the time; to wit, the making of a tin pan from materials cut by the machine, and which his wife presented to her aunt, who died, according to the family record, on the fifth of September, 1852. If he is not mistaken, in the fact that the material for the pan was cut by the machine, it is evident that it was in operation as early as the summer of 1852.

Several reasons, however, may be alleged, why this proof should not be allowed to invalidate the complainants' invention. The evidence in regard to the time is doubtful and contradictory. Mr. Hendrickson was quite as positive, in his affidavit, that it could not be earlier than the summer of 1855, as he was in his testimony, that it could not be later than September, 1852.[2] Not a vestige of the old machine remains, and the model exhibited, is the simple reproduction of the witness' memory, after the lapse of many years, constructed, it may be assumed under the circumstances, in the light and knowledge of the complainants' machine, which, it was claimed, was anticipated by it.

But the principal reason is, that it comes before the court in the category of abandoned experiments. There is no pretence that La Baw ever saw it, or derived any knowledge from it. He is the original inventor, if not the first, so far as the Hendrickson machine is concerned, and it is hardly just to inventors, that the prima facie case, made by original letters patent, a reissue, and an extension, should be set aside by the naked testimony of a witness, with nothing, except a fallible memory, to support his statement, that upwards of twenty years before he made a machine, closely resembling the complainants'; and more especially, when, not a single person is produced who ever saw the machine, and when Mr. Humphreyville, the foreman of Bachus & Co., for whom it was constructed, testifies with great distinctness, that he had charge of the factory, from 1849 to 1854, that no such machine was ever in the establishment, whilst he was there, and could not have been exhibited and used, without his knowledge.

With regard to the machine for cutting paper, testified to by Charles A. Jenks, it is not shown with any degree of certainty, that the one exhibited antedates the invention of La Baw. The other, used by him in 1852, or 1853, had no drawing, or shear cut, but operated upon a bed with horizontal cutters, and was, at best, only an experiment, which seems to have been soon abandoned.

And in reference to the mortising machine, seen by Mr. Montgomery, at one of the fairs of the American Institute in New York City, before 1847, and, probably, as early as 1844, he was then about nineteen years of age, and his whole knowledge of what he casually saw, rests in his recollections, without support or corroboration from any other source. He says, the machine consisted of an auger, surrounded by chisels and knives, set at right angles, each to the other, and capable of being forced down or depressed by a hand lever, the auger revolving inside of them. These knives cut into the corners at right angles, while the auger bored out the core and threw out the chips, both of the core, and of the corners or angles. It was used for mortising rectangular holes in wood. No such machine was brought forward; and no evidence adduced, that any such were ever in use, or are in existence now. It is hardly necessary to refer to authority, to show, that where, an original inventor has perfected his improvement, whereby he puts the public into the possession of his invention, and has obtained his patent, its validity is not to be assailed, nor its value destroyed, as was so well said in Hitchcock v. Tremaine [Case No. 6,540], by allowing infringers and rival inventors to set up crude and unsuccessful experiments, as anticipating it, in describing which, dim recollections

---

[2] [G O. G. 724, gives "1872."]

are stimulated, and the consciences of witnesses strained, in their attempts to clothe with living flesh, what had always remained an inert and useless skeleton. Such cases as Ransom v. New York [Id. 11,573], Cahoon v. Ring [Id. 2,292], Goodyear v. Day [Id. 5,569], and White v. Allen [Id. 17,535], exhibit the well-settled law on this subject.

3. The last inquiry is, whether the Hall patent is an infringement of the complainants' reissue? The complainants charge the defendants with the making and vending to others, to be used, a large quantity of mitre machines containing the material parts of La Baw's invention, and which directly infringe the second claim of his reissue. The defendants admit the making and sale, but deny, that the Hall machine, in any respect, infringes upon the complainants' patent. Letters patent [No. 21.194] were granted to Stephen W. Hall, for "an improved machine for cutting mitres," August 17, 1858. He disclaims the use of the knives adjusted at right angles and attached to a sliding rest, and concedes that such an arrangement is substantially described in the La Baw patent of June 27, 1854. But he claims: (1) The use, in mitre machines, of flanges, and a groove in the frame, for the purpose of guiding and sustaining the outer and inner edges of the knives, and preventing them from springing; (2) the combination of the flanges, frame, grooves, and sliding rest, substantially in the manner and for the purpose set forth.

The peculiar features of the Hall patent are the flanges, and the groove, to guide and sustain the angular knives. There seems to be nothing in the La Baw machine that is so well adapted to this purpose, and accomplishes it, so well. But this will not justify their use, during the life of the La Baw patent, if it shall be necessary, in order to make them efficient and valuable, to appropriate any of the devices belonging specifically to the La Baw invention.

What is his invention? So far as regards the present case, it is sufficient to say, that it refers to machines for cutting mitres. He has three claims in his reissue, but, the first and third have reference to parts of the machine, for the violation of which, no issue has been raised. The complaint is for infringing the second claim, which is as follows: "The knives or cutter X, arranged as described, in combination with mechanism for operating the same, for cutting mitres, substantially as described and specified." In his specifications, he says, that his invention consists, (1) in the construction and arrangement of an angular cutter, which reciprocates vertically, and cuts mitres, in material, with a shear cut; (2) in so constructing and arranging angular cutters, reciprocating vertically, that both a mitre and a square joint may be cut simultaneously; and (3) in a mechanism for holding the material for the action of the cutting knives.

The mechanism, which is properly the mitre machine, is an angular cutter, vertically reciprocating, carried in a sliding stock, operated by a lever, and has a bed for supporting the object operated upon, and also a guide for preserving the relation of such object to the cutting instrument in the manner required for making a mitering cut. These three elements, therefore, are found: (1) An angular cutter, capable of delivering a shear cut, and carried by a sliding stock; (2) mechanism for applying the necessary power; and (3) a table or bed, provided with stops or guides, for holding the object to be operated upon in proper position and relation to the cutting instrument. Is there any substantial difference in these descriptions of the parts of the two machines used for cutting mitres? Are they not the same in principle? What device appears in the Hall machine, which is not a mechanical equivalent for the corresponding one, in La Baw's? It is the old story of taking up the thread of another's invention or combination, improving upon it by the substitution of well known equivalents, and then claiming the merit of the whole invention. In the present state of the mechanical arts, it is the most usual and obvious mode of infringing the rights of others, but none the less an injury, against which, it is the duty of the court, to give protection. It is the judgment of the court, that the defendants have infringed the second claim of complainants' reissue, and there must be a decree for an injunction, and an account.

[There were objections taken to the master's report filed in pursuance to the decree above, upon consideration of which the court entered a decree for $1,646.41. Case No. 7,961.]